UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. 09-50099-JLV |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JASON LITTLE, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ADOPTING IN PART AND MODIFYING IN PART
REPORT AND RECOMMENDATION, SUSTAINING IN PART
AND OVERRULING IN PART OBJECTIONS, AND
GRANTING MOTION TO SUPPRESS**

Before the court is a motion to suppress evidence filed by defendant

Jason Little on January 15, 2010. (Docket 20). Mr. Little's suppression

motion was referred to Magistrate Judge Veronica Duffy for a report and

recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and the standing

order dated June 11, 2007. A suppression hearing was held before the

magistrate judge on February 2, 2010. Magistrate Judge Duffy issued her

report and recommendation on February 3, 2010. (Docket 26). The

government filed its notice of appeal (Docket 27) on February 17, 2010, as

its objections to the report and recommendation under § 636(b)(1)(C). The

defendant filed his response to the notice of appeal. (Docket 28).

Under the Federal Magistrate Act, 28 U.S.C. § 636(b)(1)(C), if a party

files written objections to the magistrate judge's proposed findings and

recommendations, the district court is then required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id.  The court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.

## THE GOVERNMENT'S OBJECTIONS

The government's objections to the report and recommendation of the magistrate judge consist of two minor factual objections:

1. That the Little vehicle was "almost exactly two seconds behind [the pickup and trailer]" and not "two to three seconds" as determined by the magistrate judge.

2. That the concrete curb [the median] separating northbound traffic from southbound traffic was a "standard curb" height and not "eight to ten inches high" as determined by the magistrate judge.

(Docket 27, p. 2).  Otherwise, the government acknowledged that the report and recommendation of the magistrate judge "accurately sets out the facts surrounding the case." Id.  The government also objects to the magistrate judge's legal conclusions regarding interpretation of S.D.C.L. § 32-26-22 and the determination of the arresting officer's application of that statute to justify the stop of Mr. Little's vehicle.  (Docket 27, p. 3).

## FACTUAL BACKGROUND

Based upon the limited nature of the government's objections, the facts, unless otherwise indicated, will be those found by the magistrate judge and contained in her report and recommendation.  (Docket 26).

Officer Josh Twedt had been a police officer with the Rapid City Police Department for a little over two years at the time of the stop in question.  No evidence of any other law enforcement experience on Officer Twedt's behalf was introduced.  On September 16, 2009, shortly after 4 p.m., Officer Twedt was on duty and parked at the intersection of South Highway 79 and Old Folsom Road.  Officer Twedt's patrol vehicle was parked on the shoulder of Old Folsom Road on the east side of Highway 79, facing west.  Across Highway 79 from Officer Twedt was the Rapid City landfill.  This location is on the outskirts of the municipality of Rapid City, which is located to the north of Officer Twedt's location.  The speed limit on Highway 79 was 55 miles per hour (mph).

At this location, Highway 79 is a divided highway.  There are two northbound lanes and two southbound lanes.  The two directions of traffic are separated from each other by a concrete median enclosed by a curb.  This curb tapers to a point before ending at the intersection of Old Folsom Road and Highway 79 to enable traffic to turn off of and onto the highway.

At its widest point, the raised median dividing traffic at this location on Highway 79 is several yards across.

Officer Twedt's patrol car video, which was admitted into evidence, depicts a sunny, clear day with excellent visibility. (See Exhibit 1). Southbound traffic is well-spaced, but steady. Northbound traffic is noticeably sparse. In the first 41 seconds of the video tape, nine vehicles pass by Officer Twedt's location traveling south on Highway 79. A tenth southbound vehicle on Highway 79, a white van, pulls into the separate left turn lane, waiting for northbound traffic to clear so the white van can then turn east onto Old Folsom Road where Officer Twedt's patrol car is situated.

A full 41 seconds of the video plays before the first northbound vehicle is observed. A second northbound vehicle, a pickup truck pulling a small trailer (the "pickup"), follows four seconds after the first vehicle. Mr. Little's vehicle, a white sport utility vehicle, also traveling north, then comes through the video view two seconds after the pickup.[1] Both the pickup and Mr. Little's SUV were in the right-hand lane when they passed by Officer Twedt at the intersection of Highway 79 and Old Folsom Road. After Mr.

---

[1]Accepting the government's calculation that at 55 mph a vehicle will travel 80.6 feet per second, Mr. Little's vehicle is approximately 53 yards behind the pickup and trailer (80.6 feet/second x 2 seconds = 161.2 feet ÷ 3 = 53.7 yards). All subsequent time and distance calculations are based upon 80.6 feet per second = 55 mph.

Little's SUV passes, the white van, which had been waiting to turn left, makes its turn east onto Old Folsom Road.

Approximately 320 yards to the north from Officer Twedt's location, another Rapid City police officer, Officer LaHaie, had made a traffic stop on Highway 79.[2] Officer LaHaie and the vehicle he had stopped were parked on the right-hand shoulder of the northbound lanes of Highway 79. Officer LaHaie had his amber emergency lights activated during his traffic stop.

Immediately after passing through the intersection, both the pickup and Mr. Little's SUV moved from the right lane to the left-hand lane of travel continuing northbound.[3] One second later on the video, which also records the activities of Officer Twedt's patrol car, the brakes activated signal is on–indicating that Officer Twedt has depressed his brake petal–and one second later his patrol car is in motion, with his emergency lights and siren activated.

---

[2]Having reviewed the officer's patrol car video, the court finds that Officer LaHaie's vehicle was not 200 yards north of Officer Twedt's location. Mr. Little's vehicle took 12 seconds from the point his vehicle passed in front of Officer Twedt's patrol car to reach the point where his vehicle was adjacent to Officer LaHaie's vehicle (80.6 feet/second x 12 seconds = 967.2 feet ÷ 3 = 322.4 yards).

[3]This action does not appear on Officer Twedt's video, but both the magistrate judge and this court accept Officer Twedt's testimony on this point as being true and consistent with the remainder of the video.

Officer Twedt testified, though it is not visible on the video, that Mr. Little failed to use his turn signal when moving from the right-hand lane to the left-hand lane of traffic. No testimony was elicited at the hearing as to whether the pickup in front of Mr. Little's SUV used a turn signal when that vehicle moved from the right-hand lane over to the left-hand lane. The pickup moved over first or in tandem with Mr. Little's lane change.[4] The driver of the pickup never hit his brakes, never swerved, and never deviated from his course of travel in any way in response to Mr. Little's lane change. Officer Twedt testified, and the court finds, that Mr. Little was following at an adequate and safe distance behind the pickup.

When the video shows Officer Twedt's vehicle pulling onto Highway 79 to follow Mr. Little's SUV, there is a long unbroken stretch of open highway between the officer and Mr. Little.[5] Officer Twedt testified, and it is evident on the video, that there were no vehicles traveling anywhere near the rear of Mr. Little's vehicle or in the lane next to Mr. Little's vehicle. Officer Twedt's patrol car was the only vehicle behind Mr. Little's SUV.

---

[4]The government did not object to this factual determination by the magistrate judge and, having reviewed the video, this determination is logical and consistent with the remainder of the video.

[5]On the video it took approximately seven seconds from the time Mr. Little's SUV passed through the intersection for Officer Twedt to get the patrol car in motion and then centered in the right-hand lane. During that time Mr. Little would have traveled approximately 188 yards (80.6 feet/second x 7 seconds = 564.2 feet ÷ 3 = 188 yards).

After passing Officer LaHaie's location, Mr. Little's SUV moved from the left-hand lane to the right-hand lane and he used his turn signal when doing so. Mr. Little's SUV then stopped and parked appropriately on the right shoulder of the road, where Officer Twedt pulled up behind the SUV and parked his patrol car.

Both vehicles came to a stop at 16:10:38. (See Exhibit 1). At 16:11:55 on the video Officer Twedt, outside and between the two vehicles, conducted a pat-down search of Mr. Little's body, including reaching into his pants pockets, less than two minutes after the vehicles rolled to a stop. Id. The search of Mr. Little's SUV began at 16:17:39, seven minutes after Officer Twedt stopped Mr. Little's vehicle. Id.

## DECISION

A traffic stop is legal under the Fourth Amendment if it is supported by probable cause to believe that a violation of law has occurred. Whren v. United States, 517 U.S. 806, 810 (1996). "An officer has probable cause to conduct a traffic stop when he observes even a minor traffic violation. This is true even if a valid traffic stop is a pretext for other investigation." United States v. Sallis, 507 F.3d 646, 649 (8th Cir. 2007) (internal quotations omitted).

A traffic stop under the Fourth Amendment can also be justified by a lesser showing of "reasonable suspicion" pursuant to Terry v. Ohio, 392 U.S.

1 (1968); United States v. Winters, 491 F.3d 918, 921 (8th Cir. 2007).  An officer making a Terry stop "must be able to articulate something more than an incohoate and unparticularized suspicion or hunch."  United States v. Sokolow, 490 U.S. 1, 7 (1989) (quoting Terry, 392 U.S. at 27) (internal quotation omitted).  "The Fourth Amendment requires 'some minimal level of objective justification' for making the stop."  Sokolow, 490 U.S. at 7 (quoting INS v. Delgado, 466 U.S. 210, 217 (1984)).

The Supreme Court has held that "probable cause means 'a fair probability that contraband or evidence of a crime will be found.' " Id. (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).  The "level of suspicion required for a *Terry* stop is obviously less demanding than for probable cause."  Id. (referencing United States v. Montoya de Hernandez, 473 U.S. 531, 541 (1985).  A police officer "must have a particularized and objective basis for suspecting criminal activity at the time the stop is made . . . ."  United States v. Spotts, 275 F.3d 714, 718 (8th Cir. 2002) (internal quotation omitted).

"Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability.  Both factors–quantity and quality–are considered in the 'totality of the circumstances–the whole picture,' that must be taken into account when

evaluating whether there is reasonable suspicion." <u>Alabama v. White</u>, 496

U.S. 325, 330 (1990) (quoting <u>United States v. Cortez</u>, 449 U.S. 411, 417

(1981)).  If the investigatory stop is not supported by reasonable suspicion

or if the officer exceeds the proper scope of the stop in violation of Fourth

Amendment standards, then any evidence derived from the stop must be

excluded at trial.  <u>Wong Sun v. United States</u>, 371 U.S. 471, 484 (1963);

<u>United States v. Wheat</u>, 278 F.3d 722, 726 (8th Cir. 2001).

Officer Twedt testified that the <u>sole</u> reason he stopped Mr. Little's SUV

was Mr. Little's failure to use his turn signal when moving from the right

lane to the left lane.  He articulated no other suspicion of criminal conduct

or other justification for the stop of Mr. Little's vehicle.  Thus, the analysis

must focus on whether Officer Twedt had reasonable suspicion to believe a

traffic violation occurred.  <u>Whren</u>, 517 U.S. at 810.

Mr. Little moved to suppress the fruits of the search of his vehicle

which followed the traffic stop, arguing there was no valid basis for the stop.

The government resists this motion, asserting that Mr. Little did violate

S.D.C.L. § 32-26-22 or, alternatively, that the stop was justified because of

Officer Twedt's erroneous, but objectively reasonable, belief that Mr. Little

violated the law.  S.D.C.L. § 32-26-22 provides, in relevant part:

> The driver of any vehicle upon a highway before . . . turning from
> a direct line shall first see that such movement can be made in
> safety and . . . <u>whenever the operation of any other vehicle may be
> affected by such movement</u> shall give a signal . . . [by hand and

arm or by mechanical or electrical signal device] plainly visible to the driver of such other vehicle of the intention to make such movement. A violation of this section is a Class 2 misdemeanor.

(Emphasis added).

Officer Twedt testified it was his interpretation of this statute that, first, the lane change must be able to be made safely and then a driver is required to use a signal for a lane change when there is "other traffic in the immediate area." See audio recording of suppression hearing. He testified that several vehicles could have been influenced by the movement of Mr. Little's SUV when the lane change occurred. Those vehicles were identified by Officer Twedt to be:

1.  Officer LaHaie's patrol car and the vehicle he had stopped on the northbound shoulder;

2.  The pickup in front of Mr. Little;

3.  The white van waiting to turn left onto Old Folsom Road from the southbound lane of Highway 79; and

4.  Several other vehicles in the area–the southbound traffic on Highway 79.

The "determinative question is not whether [Mr. Little] violated [the law] . . . but whether an objectively reasonable police officer could have formed a reasonable suspicion that [Mr. Little] was committing [such a] violation." United States v. Martin, 411 F.3d 998, 1001 (8th Cir. 2005). Even if Officer Twedt was mistaken about the existence of a lane change violation, "the validity of a stop depends on whether the officer's actions

10

were objectively reasonable in the circumstances, and in mistake cases the question is simply whether the mistake, whether of law or fact, was an objectively reasonable one." Id. (quoting United States v. Smart, 393 F.3d 767, 770 (8th Cir. 2005)).

While Officer Twedt may have believed in good faith that Mr. Little was in violation of the law, "his subjective good faith is not sufficient to justify the stop . . . ." Id. Every law enforcement officer has "an obligation to understand the laws that they are entrusted with enforcing, at least to a level that is objectively reasonable." Id. The courts do not expect a police officer "to interpret the traffic laws with the subtlety and expertise of a criminal defense attorney." Id. (quoting United States v. Sanders, 196 F.3d 910, 913 (8th Cir. 1999). But "[a]ny mistake of law that results in a search or seizure . . . must be objectively reasonable to avoid running a foul of the Fourth Amendment." Martin, 411 F.3d at 1001 (emphasis in original).

After reviewing the legal authorities analyzing decisions of other courts in states with a similar statute as cited by the magistrate judge, the court agrees that whether there was any other traffic which "may be affected by" Mr. Little's lane change is a factual question, highly dependent on the testimony presented at the suppression hearing. The magistrate judge's factual analysis need not be repeated here because the court adopts the facts as set forth in the magistrate judge's report and recommendation

except for the two minor fact findings to which the government objected. (See *infra* p. 2).

The application of S.D.C.L. § 32-26-22 in this particular case is distinguishable from Martin because the court is "not confronted with any 'counterintuitive and confusing" statute. "May be affected by" is a simple and forthright phrase which can be easily understood by both layman and lawyer alike. The phrase does not extend to traffic off in the distance which by some possibility or stretch of the imagination could be affected by the course of travel chosen by a driver. "May be affected by" reasonably applies to any other vehicle and driver who could be influenced by the conduct of the subject vehicle. "May be affected by" only requires consideration of any other vehicle with which the subject vehicle could reasonably be expected to collide, or whose course of travel would be influenced, if a lane change occurred without the notice intended by an advance signal. In the absence of some ambiguity, a clearly defined statute acted upon through an officer's misunderstanding of the law or by an officer who acts based upon his own "notions of what the law ought to be" is not objectively reasonable. See United States v. Washington, 455 F.3d 824, 828 (8th Cir. 2006).

As a fact-intensive application of S.D.C.L. § 32-26-22 reveals, there were no other vehicles which reasonably "may be affected by" Mr. Little's lane change. An assessment of the factual setting involving each of the four

vehicles identified by Officer Twedt discloses that his application of S.D.C.L. § 32-26-22 to Mr. Little's conduct was not a factually reasonable or an objectively reasonable application of the law.

THE WHITE VAN

The unsignaled lane change at issue occurred <u>after</u> Mr. Little's SUV was beyond the intersection where the white van was waiting to turn left onto Old Folsom Road. The van was required to yield to oncoming traffic, including Mr. Little's SUV, before execution of its left turn across the northbound lane of Highway 79. The movement of the white van could not in any way be "affected by" Mr. Little's northbound vehicle. The white van, regardless of any lane change by Mr. Little's SUV, would have had to wait until both lanes of the northbound traffic cleared the intersection before the white van could start its turn onto Old Folsom Road. In fact, the white van can be seen initiating its left turn as soon as Officer Twedt began his right turn north onto Highway 79. The movements of the white van and Officer Twedt's patrol car confirm one thing for certain–there was no northbound traffic behind Mr. Little's SUV, as neither the white van nor Officer Twedt could have completed their vehicle maneuvers safely had any vehicle been traveling in proximity to the rear of Mr. Little's SUV.

OTHER SOUTHBOUND TRAFFIC

Officer Twedt's attempt to include any other southbound vehicles on Highway 79 as "may be affected" traffic requiring Mr. Little to signal his northbound lane change, in order to comply with S.D.C.L. § 32-26-22, is not credible. There is a concrete curb and raised median several yards wide separating the southbound traffic from the northbound lanes of travel. The prosecution's embrace of Officer Twedt's objectively unreasonable attempt to make the statute applicable to southbound traffic erodes the overall persuasiveness of the government's arguments.

THE PICKUP

Officer Twedt testified that the pickup pulling a trailer northbound ahead of Mr. Little's SUV was a "may be affected by" vehicle. After passing through the intersection in front of Officer Twedt, the pickup moved from the right lane to the left-hand lane of travel continuing northbound. It seems probable that the pickup made its lane change under South Dakota's "move over for emergency vehicles" statute, S.D.C.L. § 32-31-6.1.3. That statute requires vehicles with multiple lanes of traffic to move to the lane farthest from a stopped emergency vehicle displaying its red flashers or any other stopped vehicle displaying amber or yellow warning lights. Id. Officer LaHaie's patrol car and the vehicle he had stopped some 300 yards ahead on the right shoulder would come within the requirements of that statute.

14

The undisputed facts are that the pickup was traveling approximately 55 mph, two seconds, and some 53 yards ahead of Mr. Little's SUV, with a safe and appropriate distance between the vehicles. The pickup moved into the left lane first or in tandem with Mr. Little's lane change. Finally, Officer Twedt testified that the pickup never seemed to have slowed down, so one can only presume these two vehicles maintained their speed and distance apart through the lane change and thereafter.

As the magistrate judge pointed out, had the pickup stayed in the right-hand lane while Mr. Little's SUV moved into left-hand lane, there is the possibility that the pickup would have been "affected by" Mr. Little's lane change, particularly if Mr. Little was in the process of overtaking the pickup. But those were not the facts presented in the suppression hearing and that is not the scenario being evaluated by this court in determining whether Officer Twedt's application of S.D.C.L. § 32-26-22 was an objectively reasonable one.

The government argues that in light of this statute "it is preferable to require the subject vehicle to signal a turn unnecessarily rather than deal with the consequences if a signal is not made and the change of direction does, in fact, affect another vehicle." (Docket 27, p. 3). "Better safe than sorry" may be a good defensive driving tactic, but it is not the law.

It was objectively unreasonable for Officer Twedt to conclude that the pickup "may be affected by" the action of Mr. Little's SUV when the pickup went through the exact lane change over 50 yards ahead and a safe distance away from Mr. Little's vehicle.

<u>OFFICER LAHAIE'S PATROL CAR AND STOPPED VEHICLE</u>

Officer Twedt testified that Officer LaHaie's police vehicle was stopped approximately 200 yards north of his location and off on the right-hand shoulder. The fact of the matter is that this other patrol car and the vehicle Officer LaHaie stopped were more than 300 yards up the road. Accepting as fact that Mr. Little's SUV made the lane change within a few seconds after passing through the Old Folsom Road intersection, Officer LaHaie's vehicle was still several seconds up the road from Mr. Little's vehicle at 55 mph. It took approximately twelve seconds for Mr. Little's SUV to go from the intersection to a position adjacent to Officer LaHaie's patrol car. During the seven seconds it took Officer Twedt to get his patrol car centered into the right-hand lane to pursue Mr. Little, the SUV had been in the left-hand lane for three or four seconds and was still eight or nine seconds from reaching Officer LaHaie's vehicle, a distance of approximately 200 yards.[6]

To suggest that a safe separation of vehicles going approximately 55 mph is two seconds (53 yards), but that to comply with S.D.C.L. § 32-26-22

---

[6] 55 mph = 80.6 feet/second x 8 seconds = 644.8 feet ÷ 3 = 214.9 yards.

16

it is necessary to signal a lane change because an emergency vehicle is parked on the side of the road between 200 and 300 yards ahead, is not a reasonable interpretation or application of this statute. Officer Twedt made both a mistake of fact (distance) and a mistake of law (application) and both were unreasonable. "There is [no] basis in state law for [the officer's action] and [there is no ambiguity] . . . that caused the officer to make the mistake . . . [so that the officer's action] may be objectively reasonable." <u>Washington</u>, 455 F.3d at 828. "[I]n the absence of such evidence, [Officer Twedt] cannot act upon [his] misunderstanding[ ] of clear statutes, or worse yet, [his] own notions of what the law ought to be." <u>Id.</u>

<u>THE EXCLUSIONARY RULE SHOULD APPLY</u>

After concluding Officer Twedt had neither probable cause nor reasonable suspicion to stop Mr. Little's vehicle, the magistrate judge addressed the ultimate question of whether the evidence seized from the vehicle should be suppressed. "[T]he United States Supreme Court has refused to adopt a per se, or 'but for,' rule that would make inadmissible any evidence, whether tangible or live-witness testimony, where such evidence is obtained through a chain of causation that began with an illegal arrest . . . ." <u>United States v. Simpson</u>, 439 F.3d 490, 495 (8th Cir. 2006) (citing <u>United States v. Ceccolini</u>, 435 U.S. 268, 276 (1978)). "[T]he indirect fruits of an illegal search or arrest should be suppressed when they bear a

sufficiently close relationship to the underlying illegality." Id. (citing New York v. Harris, 495 U.S. 14, 19 (1990)). However, the Supreme Court has dictated that "evidence obtained under these circumstances may be admissible if the unlawful conduct has become so attenuated or has been interrupted by some intervening circumstance so as to remove the taint imposed upon that evidence by the original illegality." Id. (citing United States v. Crews, 445 U.S. 463, 470 (1980)) (internal citation omitted).

Applying the Wong Sun[7] test, the court agrees with the magistrate judge that the "court must consider three factors to determine whether physical evidence found in the search of Mr. Little's person and his vehicle was the fruit of the Fourth Amendment constitutional violation, or whether it was obtained by 'means sufficiently distinguishable to be purged of the primary taint.' " (Docket 26, pp. 26-27) (citing Wong Sun, 371 U.S. 487-88). The factors considered by the magistrate judge were:

1. The temporal proximity of the discovery of the evidence to the Fourth Amendment violation;

2. The existence of intervening causes between the violation and the discovery; and

3. The purpose or flagrancy of the official misconduct.

(Docket 26, p. 27). Simpson, 439 F.3d at 495 (citing Brown v. Illinois, 422 U.S. 590, 603-04 (1975)).

_____

[7] Wong Sun v. United States, 371 U.S. 471 (1963).

18

Officer Twedt testified that the sole reason for his stop of Mr. Little's vehicle was the violation of the lane change signal law. There was not any other reasonably articulated suspicion by Officer Twedt that Mr. Little otherwise may be violating the law or engaging in criminal misconduct. Based on the video of this traffic stop, the magistrate judge found Officer Twedt's search of Mr. Little's person occurred less than two minutes after both vehicles stopped on the shoulder of the road. (Docket 26, p. 29). Up to this point, there was no evidence or reasonable suspicion that Mr. Little was engaged in unlawful conduct. Mr. Little promptly provided Officer Twedt with the registration for the vehicle and his own driver's license. Nonetheless, Officer Twedt chose to remove Mr. Little from the SUV and conduct a pat-down search of his person. "There was no separation between the Fourth Amendment violation-the traffic stop-and the searches of Mr. Little and the vehicle in which he was traveling." Id. pp. 29-30. "There is no indication that the evidence [seized] would ever have been discovered absent the Fourth Amendment violation." Id. p. 30. Thus, the magistrate judge concluded "that the taint of the Fourth Amendment violation had not been purged and any evidence deriving from the traffic stop must be suppressed." Id.

The detention was illegal and Mr. Little's production of the registration and driver's license did not give Office Twedt authority to "expand the scope

19

of the stop and ask additional, more intrusive, questions." United States v. Lyton, 161 F.3d 1168, 1171-72 (8th Cir. 1998) (citing United States v. Ramos, 42 F.3d 1160, 1163 (8th Cir. 1994)).  Furthermore, the audio portion of the video tape is not clear as to the exchange between Officer Twedt and Mr. Little on the issue of consent.  The magistrate judge concluded that the government failed to sustain its burden to prove that a consent to search the vehicle was given, so as to purge the taint of an illegal detention. (Docket 26, p. 30) (citing United States v. Reidesel, 987 F.2d 1383, 1388 (8th Cir. 1993).

The government filed no objections to the findings and conclusions of the magistrate judge on the suppression issue under Wong Sun, 371 U.S. 471 (1963).  Section 636(b)(1) of Title 28, United States Code, specifically requires any party objecting to the findings or conclusions of a report and recommendation of a magistrate judge to submit their objections for district court review.  The government's "failure to file any objections [on this particular issue] waived [its] right to de novo review by the district court of [that] portion of the report and recommendation of the magistrate judge as well as [its] right to appeal from the findings of fact contained therein." United States v. Rodriguez, 484 F.3d 1006, 1010-11 (8th Cir. 2007) (quoting United States v. Newton, 259 F.3d 964, 966 (8th Cir. 2001) (additional internal citation omitted).

Having completed a *de novo* review of the traffic stop video tape and the audio recording of the testimony presented at the suppression hearing, the court adopts, with minor exceptions noted, the factual findings and legal conclusions of the magistrate judge and agrees that any and all evidence seized during this traffic stop must be suppressed. There is no "intervening circumstance so as to remove the taint imposed upon that evidence by the original illegality [of the traffic stop]." <u>Simpson</u>, 439 F.3d at 495 (8th Cir. 2006) (internal citation omitted). The taint of the Fourth Amendment violation has not been purged and the evidence seized during the stop of Mr. Little's vehicle must be suppressed. <u>Wong Sun</u>, 371 U.S. at 488.

## ORDER

After conducting a *de novo* review of the entire record, it is hereby

ORDERED that the Report and Recommendation of Magistrate Judge Duffy (Docket 26) and the factual findings and legal conclusions, except as modified herein, are adopted by the court.

IT IS FURTHER ORDERED that the two factual objections of the government are sustained, but that the remainder of the notice of appeal (Docket 27) is overruled.

IT IS FURTHER ORDERED that defendant's motion to suppress evidence (Docket 20) is granted.

IT IS FURTHER ORDERED that any and all physical evidence seized during the traffic stop of Mr. Little's vehicle on September 16, 2009, is suppressed.

Dated April 7, 2010.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE